# W. D. Clark

## v.

## George Plumstead.

Notice—Knowledge of facts that will put one upon inquiry.— Where a party has knowledge of facts sufficient to put him upon inquiry, he is bound by whatever such inquiry would develop, and if he neglects to make the inquiry, and suffers loss, such loss must be attributed to his own negligence, and he can not be relieved in a court of equity.

Appeal from the Circuit Court of Kane county; the Hon. C. W. Upton, Judge, presiding. Opinion filed May 31, 1882.

On August 17, A. D. 1877, appellee, George Plumstead, filed his bill of complaint in the Circuit Court of Kane county, against appellant, W. D. Clark, setting up in said bill that he was the owner in fee of lot 7, in W. D. Clark's subdivision of block 9, in D. K. Town's addition to Aurora, Ill. That appellant in brief held a trust deed on said premises executed to him by one A. H. Ellwood and wife, to secure the sum of $3,000. That said trust deed was a cloud upon his title to said lot 7, and prayed that the same might be declared a cloud upon his title, and held void as to said lot.

Appellant filed his answer to said bill of complaint, fully setting forth in what manner appellee derived his title to said lot 7; the consideration of said notes and trust deed charged that said trust deed was a prior lien on said lot 7 to the amount of $600—the purchase price of said lot. And appellant also filed his cross-bill, praying to have said trust deed foreclosed and declared a first lien on said lot 7 for the $600 purchase money, and the accumulated interest thereon.

Appellee filed his answers to said cross-bill, and a hearing had at the April Term of the Kane county Circuit Court, at which hearing the court dismissed appellant's cross-bill, granted the prayer of complainant in the original bill, and declared said trust deed a cloud upon the title to said lot 7, and absolutely null and void.

In the year 1872, the appellant was the owner in fee of lots 7, 8, 9 and 10, in W. D. Clark's subdivision of block 9, in Town's addition to Aurora. At that time one A. H. Ellwood desired to purchase lots 8, 9, and 10, and the appellee wished to buy lot 7. Ellwood bargained for the lots desired by him, and acted as the agent of appellant in selling lot 7 to appellee.

The arrangement between the parties was that no money was to be paid down to appellant by either Ellwood or appellee, upon their respective purchases, but they were to erect certain buildings upon the premises, and at the end of one year, one fourth of the purchase money was to be paid, and upon completion of the buildings the purchasers had the privilege of taking a deed for their respective purchases, and secure the remainder of the purchase money by trust deed or mortgage upon the premises.

Shortly after this arrangement was made, the appellee informed Ellwood and the appellant that he could not raise the money to build the house on lot 7 and therefore could not take the lot, and it was thereupon arranged that Ellwood would buy lot 7 upon the same terms as the appellee was to have it, and would then furnish appellee the money to build the house and let him have the lot upon like terms. This being satisfactory to appellee, he went into possession of the lot in July under this arrangement with Ellwood. At this time the appellee knew that Clark owned the lots and also knew upon what terms Ellwood had purchased the lots of the appellant.

In December following, Ellwood, having erected buildings and made various improvements upon the lots, received a deed from the appellant for all the lots, and on March 1, 1873, he executed his notes for the purchase money and secured the same by trust deed upon all the lots so deeded to him. This trust deed was not filed for record until May 10, 1873, for the reason that Ellwood, in making the improvements, had become indebted to mechanics and material men, and it was arranged that Ellwood should borrow $2,000, with which to satisfy the lien upon the lots and should secure the same by mortgage

Clark v. Plumstead.

upon lots 8, 9 and 10, as a prior lien to the trust deed of appellant, as he was to file it for record subsequently to the recording of the $2,000 mortgage.

This was done, and when the appellant filed his trust deed for record on May 10, it became the second lien upon lots 8, 9 and 10. On the 9th day of May, 1873, Ellwood conveyed lot 7 to appellee, but the deed was not filed for record until August, 1874. The appellee by the original bill sought to have the trust deed from Ellwood to appellant canceled, as being a cloud upon his title, claiming that he being in possession when appellant accepted the trust deed, was notice to appellant of his interest in the premises.

Mr. A. J. HOPKINS and Mr. N. J. ALDRICH, for appellant; that whatever is sufficient to put a purchaser upon inquiry is considered a legal notice to him, cited Rupert v. Mark, 15 Ill. 540; Russell v. Ransom, 76 Ill. 171; Hamilton v. Royer, 2 Schoales & Lefroy, 326; Kennedy v. Green, 3 Mylne & K. 171.

Mr. A. C. LITTLE, for appellee; that appellant having notice of the sale to appellee before his trust deed was recorded, is estopped from claiming any rights under the trust deed, as against appellee, cited Hilliard on Vendors, 405; Warren v. Richmond, 53 Ill. 52.

Possession of land is notice of all claims of the party in possession, both legal and equitable: Lumbard v. Abbey, 73 Ill. 177.

PILLSBURY, J. A careful examination of the evidence contained in this record causes us to believe that the appellant is entitled to the relief prayed in his cross-bill. He had received the trust deed from Ellwood securing the purchase money of the lots long before the appellee obtained his deed for lot 7 from Ellwood, and, therefore, the vital question in the case is, whether the appellee at that time had actual notice of the trust deed, or had knowledge of such facts and circumstances as would lead a reasonably prudent man to make inquiry for the purpose of ascertaining whether such trust deed or mortgage was in fact made. If he had knowledge of such facts that

should have put him upon inquiry, and such inquiry would have resulted in his ascertaining the truth; then he is held to a notice of the facts actually existing.

In the spring of 1872, he bargained with Clark for lot 7, upon the same terms that Ellwood was to have the other lots; but as he could not obtain the money to build the house, he made an arrangement with Ellwood to buy the lot and build the house for him, and the appellant did include in Ellwood's purchase, lot 7, for the appellee. No deed was then made to appellee by Ellwood, for the reason that he had not received any conveyance from Clark. Ellwood having built the house, appellee took possession of the premises under his verbal contract of purchase, knowing that the title was to come from appellant.

We think the evidence sufficiently shows that appellee had knowledge that Ellwood had bought all the lots upon credit, and was not to receive a deed until the buildings were erected, when a deed was to be made, one fourth of the purchase money was then to be paid, and a mortgage given by Ellwood upon the lots to secure the deferred payments. The appellant in fact states very positively, that immediately after the sale of lot 7 to Ellwood for Plumstead, he informed Plumstead that he had sold the lot to Ellwood on the same conditions that he had in the first instance offered it to him.

In this statement the appellant is corroborated by Ellwood. The appellee in his testimony does not deny that appellant may have told him so, but says he has no recollection of such conversation. In our opinion these facts known to appellee at the time he received his deed from Ellwood, were sufficient to put him upon inquiry whether Ellwood had paid for the lots or given a mortgage upon them to secure the purchase price according to the terms of the sale, and if he had inquired of appellant, he would have learned that the trust deed was already executed and delivered, and the reason it was not recorded.

Knowing these facts, and the avenues of knowledge being open to him by ordinary diligence, to ascertain the truth, if he did not avail himself thereof, and he suffers loss thereby, such loss must be attributed to his own negligence, and he can not be relieved in a court of equity

Clark v. Plumstead.

But aside from these considerations, there is evidence in the record that he had actual notice of the trust deed. The appellant testifies that after receiving the trust deed in March, 1873, and while in Aurora he saw the appellee, and informed him that Ellwood had given him a trust deed upon the lots, but he was keeping it off the record so as to enable Ellwood to place a first mortgage upon the other lots, for money to pay the mechanic's liens then existing thereon. Ellwood also testifies that at or before the time of giving his trust deed to appellant, the appellee knew that he was endeavoring to raise the money to pay for the lots and improvements.

The appellee, it is true, denies in general terms that he had notice of the terms of sale of the lot to Ellwood, or of the fact that the trust deed had been executed by Ellwood, but his whole testimony considered, shows that his recollection is at fault concerning many of the details of the transactions between the parties, and leads us to the conclusion that his testimony should not prevail over the clear and positive statements of the appellant, corroborated as they are in the main by Ellwood, and the well established facts and circumstances appearing in the case. Again upon this question, considering the situation of the parties with reference to the sale from appellant to Ellwood, and from Ellwood to appellee, it is evident that the appellee can not be fairly said to occupy the position of a third party purchasing from Ellwood without notice of the rights of appellant in the premises.

When he found himself unable to build the house without assistance, and consequently could not comply with his contract originally made with appellant, he made the arrangement with Ellwood to buy that lot for him, and appellant sold it to Ellwood, for the purpose of accommodating the appellee, and place it within his power through the aid derived from Ellwood, to erect the buildings required by the contract of sale before he could receive a deed for the premises. It was mutually understood that the purchase was made at his solicitation and for his benefit. The intention of all the parties was, that he was to take possession of the lot, and improve it before he obtained the title either from Ellwood or appellant.

His possession, therefore, taken under the verbal contract with Ellwood, and that resting upon like contract with appellant, was not inconsistent with the title of appellant in the premises, but was in harmony with it, in subordination thereto, and his continuing right to the possession depended upon the completion of the contract with appellant and the payment or securing of the purchase money. Under such circumstances, we think that in equity the appellee can not have any greater rights in the premises as against the appellant in asserting his claim to the payment of the purchase money, than he would have, had he dealt with appellant directly instead of through Ellwood. He knew that the lot was not paid for, and the arrangement contemplated a credit and that a mortgage was to be given to secure the purchase money, and in such case no reason is perceived why appellant should not be permitted to foreclose his mortgage for the amount of the purchase money of the lot unpaid, or if no mortgage had been given, why a vendor's lien could not be enforced against the appellee. We are therefore of the opinion that the court erred in granting the relief asked by the original bill, and in dismissing the cross bill of appellant and the decree must be reversed and the cause remanded. As the sale of lot 7 was treated by the parties as a sale to and for the use of appellee, such lot should in no event be charged with any greater sum than is due for the purchase money of that lot alone.

Decree reversed.